## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JULIE A. GASKINS,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL NO. JKB-15-2961** |
| **BALTIMORE CITY** | * | |
| **PUBLIC SCHOOLS,** *et al.*, | * | |
| **Defendants** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM</u>

Julie A. Gaskins ("Plaintiff") filed a *pro se* action against the Baltimore City Public Schools ("BCPS"),[1] the Baltimore City Board of School Commissioners ("BCBSC"),[2] and Garrett Heights Elementary / Middle School ("Garrett Heights") Principal Omotayo Abiodun[3] (collectively, "the School Defendants"), as well as the Mayor and City Council of Baltimore ("the City")[4] (collectively, "Defendants"). Plaintiff alleges that Defendants deliberately retaliated against her in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, and in further violation of 42 U.S.C. § 1981.

---

[1] BCPS is not a proper party to this suit. *See Holley v. Balt. City Bd. of Sch. Comm'rs*, No. 1011, 2015 WL 5944169, at *1 n.1 (Md. Ct. Spec. App. June 24, 2015) ("Baltimore City Public Schools is not a legal entity that may be sued."), *cert. denied*, 123 A.3d 1006 (Md. 2015) (unpublished table decision); *cf. Adams v. Calvert Cty. Pub. Sch.*, 201 F. Supp. 2d 516, 520 n.3 (D. Md. 2002) ("The school district . . . does not exist as a separate entity for purposes of suit."). Instead, the Code of Maryland provides that county boards of education may sue and be sued. Md. Code Ann., Educ. § 3-104(b)(2); *see also* Educ. § 4-303(a) (establishing the Baltimore City Board of School Commissioners).

[2] Plaintiff incorrectly refers to this entity as the "Baltimore City Schools Board of Commissioners."

[3] Plaintiff does not specify whether she intends to proceed against Principal Abiodun in her individual or official capacity.

[4] *See* Balt., Md., Charter art. 1, § 1 ("The inhabitants of the City of Baltimore are a corporation, by the name of the 'Mayor and City Council of Baltimore,' and by that name . . . may sue and be sued . . . .").

Now pending before the Court are separate Motions to Dismiss, filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, by the School Defendants (ECF Nos. 12 & 40) and the City (ECF No. 18).  Also pending is Plaintiff's Motion to Strike (ECF No. 22).[5]  The issues have been briefed, and no hearing is required, Local Rule 105.6 (D. Md. 2014).  For the reasons explained below, Plaintiff's Motion to Strike will be DENIED, and Defendants' Motions to Dismiss will be GRANTED.

## I.    Background[6]

Plaintiff, the parent of M.D., a minor student who attends Garrett Heights, alleges that, between 2013 and 2015, she repeatedly sought the assistance of the United States Department of Education, Office of Civil Rights ("OCR"), concerning "multiple issues" with BCPS.  (ECF No. 8 ¶ 11.)  On several occasions, Plaintiff's OCR complaints resulted in the formation of Early Complaint Resolution ("ECR") agreements between herself and BCPS.[7]  Plaintiff avers that Defendants "willfully and negligently retaliated against [her] after the filing of each complaint."

---

[5] A smorgasbord of additional motions are pending:  Plaintiff's Motion to Supplement (ECF No. 27); the School Defendants' Motion to Dismiss Plaintiff's Motion to Strike (ECF No. 28); Plaintiff's Emergency Motion for Protective Order (ECF No. 35); Plaintiff's Motion to File Sealed Declaration and Exhibits (ECF No. 36); Plaintiff's Second Emergency Motion for Sanctions (ECF No. 42); Plaintiff's Motion for Leave to Amend Complaint (ECF No. 45); and the School Defendants' Motion to Supplement (ECF No. 46).  These motions will be addressed below and resolved in the Order accompanying this Memorandum.

[6] Because Defendants moved to dismiss for failure to state a claim, the facts are recited here as alleged by Plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

[7] Plaintiff submitted several of these documents for the Court's review.  *See* ECF No. 9–1 (OCR Docket No. 03-13-1175, ECR Agreement requiring BCPS to enroll M.D. in a summer reading program); ECF No. 9–2 (OCR Docket No. 03-14-1164, ECR Agreement requiring BCPS to find a new placement for M.D.; convene an individual education plan meeting; and conduct compliance training); ECF No. 9–3 (OCR Docket No. 03-15-1086, unsigned ECR Agreement requiring BCPS to assess M.D. for educational loss and possible compensatory services and to conduct further compliance training); ECF No. 9–4 (OCR Docket No. 03-15-1217, unsigned ECR agreement requiring BCPS to investigate Plaintiff's May 27, 2015, complaint about bullying; to train personnel on bullying policies and procedures; and to provide a written apology to Plaintiff).

Plaintiff also submitted a copy of a Resolution Agreement resolving the complaint raised in OCR Docket No. 03-15-1086 as between OCR and BCPS.  (ECF No. 9–4 at 7.)  Plaintiff alleges that, on July 14, 2015, the Department of Education issued a letter informing her of her right to sue in federal court with respect to this complaint.  (ECF No. 8 ¶ 7.)  Plaintiff did not supply the Court with a copy of this letter.

(*Id.* ¶ 12.)  In particular, she alleges that Principal Abiodun "defamed and slandered" her in a May 20, 2015, e-mail to a BCPS parent group and certain school officials.  (*Id.* ¶¶ 15-16.)[8]

On September 29, 2015, Plaintiff filed a threadbare Complaint accusing Defendants of violating Title II of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12131 *et seq.*, as well as the ADA's antiretaliation provision,  42 U.S.C. § 12203.  (ECF No. 1.)  Thereafter, pursuant to the Court's Order of September 30, 2015 (ECF No. 3), Plaintiff submitted an Amended Complaint on October 27, 2015.  (ECF No. 8.)  In the Amended Complaint, Plaintiff abandons her ADA theories; she instead accuses Principal Abiodun of making retaliatory statements in violation of Title VII and § 1981 (Count I), and she further accuses BCPS, BCBSC, and the City of failing to train and monitor their employees in violation of Title VII and § 1981 (Counts II–IV, respectively).  Plaintiff seeks $10 million in damages and a written apology.  (*Id.* at 8.)

On November 23, 2015, the School Defendants filed a Motion to Dismiss (ECF Nos. 12 & 40);[9] the City followed with a separate Motion to Dismiss on November 27, 2015 (ECF No.

---

[8] In light of the draft ECR agreement under OCR Docket No. 03-15-1217, it appears that Principal Abiodun's e-mail may have suggested that Plaintiff made improper use of a listserv established by the BCPS parent–teacher association.  (ECF No. 9–4 at 3.)

[9] The School Defendants styled their paper as a Motion to Dismiss pursuant to Rule 12(b)(6) or, in the alternative, as a Motion for Summary Judgment pursuant to Rule 56.  Because the Court concludes that Plaintiff has not stated a claim for relief, it resolves the Motion under Rule 12(b)(6).

The Court also notes that the School Defendants redacted portions of Exhibit 2 to their Motion on January 6, 2016, pursuant to a prior Order of the Court (ECF No. 38).  Because the School Defendants refiled their Motion along with the redacted exhibit, two otherwise identical Motions to Dismiss are now open on the Court's CM/ECF docketing system:  ECF No. 12 and ECF No. 40.  The Court will resolve this anomaly by denying ECF No. 12 as filed in error and granting ECF No. 40.

The Court adds that the Rule 12/56 letter dated January 7, 2016 (ECF No. 41), which was automatically dispatched to Plaintiff upon the filing of ECF No. 40, is a nullity.  Because ECF Nos. 12 and 40 are identical in substance, Plaintiff's response in opposition to ECF No. 12 constitutes a response in opposition to ECF No. 40, and the Court requires no further briefing from Plaintiff at this juncture.

18).   Plaintiff opposed both Motions (ECF Nos. 30 & 39), and the Motions are now ripe for decision.[10]

## II.   *Standard of Review*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In analyzing a Rule 12(b)(6) motion, the Court views all well-pleaded allegations in the light most favorable to the plaintiff.   *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).   "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable[.]"   *Twombly*, 550 U.S. at 556.   Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level."   *Id.* at 555.   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'   Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"   *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

A plaintiff filing *pro se* is held to a "less stringent standard[]" than is a lawyer, and the court must construe *pro se* claims liberally, no matter how "inartfully pleaded."   *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   However, even a *pro se* complaint must meet a minimum threshold of plausibility.   *Letke v. Wells Fargo Home Mortg., Inc.*, Civ. No. RDB-12-3799, 2013 WL 6207836, at *2 (D. Md. Nov. 27, 2013); *see also Randolph v. Balt. City States Attorney*, Civ. No. WDQ-14-3176, 2014 WL 5293708, at *1 (D. Md. Oct. 14, 2014) ("The mandated liberal

---

[10] Plaintiff filed her response in opposition to the School Defendants' Motion to Dismiss on January 6, 2016, nearly four weeks out of time—ostensibly because she did not timely receive the document due to a postal discrepancy (discussed in detail below).   To date, the School Defendants have not filed a reply, but because Plaintiff's opposition brief is entirely nonresponsive to their arguments, the Court can resolve the pending Motion at this stage.

Plaintiff filed her response in opposition to the City's Motion to Dismiss on December 16, 2015. Thereafter, the City did not file a reply within the period prescribed by Local Rule 105.2(a) (D. Md. 2014).

construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, construct the plaintiff's legal arguments for him, or 'conjure up questions never squarely presented' to the court." (citations omitted)), *aff'd sub nom. Randolph v. New Tech.*, 588 F. App'x 219 (4th Cir. 2014) (mem.).

### III.   *Plaintiff's Motion to Strike (ECF No. 22)*

On December 2, 2015, Plaintiff filed a Motion to Strike the School Defendants' Motion to Dismiss.  (ECF No. 22.)  The School Defendants filed a response in opposition, styled as a separate Motion to Dismiss Plaintiff's Motion to Strike (ECF No. 28),[11] and Plaintiff replied (ECF No. 31).

Plaintiff does not cite a particular rule or authority for the proposition that the Court may strike the School Defendants' Motion to Dismiss.  Although Rule 12(f) of the Federal Rules of Civil Procedure authorizes courts to strike from *pleadings* any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," a motion to dismiss is not a pleading. Moreover, while "some cases have held that Rule 12(f) may be used to strike documents other than pleadings, the weight of authority is that such an action is not contemplated or permitted by the Rules." *Anusie-Howard v. Todd*, 920 F. Supp. 2d 623, 627 (D. Md. 2013) (footnotes omitted), *aff'd*, 615 F. App'x 119 (4th Cir. 2015) (mem.).  That said, the United States Court of Appeals for the Fourth Circuit has recognized that district courts have inherent power to strike other types of

---

[11] The Court is vexed by the copious errors in the School Defendants' memorandum accompanying their Motion to Dismiss Plaintiff's Motion to Strike.  Not only is the memorandum riddled with misspellings and citation mistakes, but it also misattributes two quotes (*i.e.*, the purported quote from Rule 5(b) and the text that is seemingly attributed to either *United States v. Clingman*, 288 F.3d 1183 (10th Cir. 2002), or *United States v. Novaton*, 271 F.3d 968 (11th Cir. 2001)).  While the occasional typo is perhaps inevitable and certainly forgivable, an abundance of errors tends to discredit the substance of a brief.  The Court admonishes defense counsel to proofread any future submissions more diligently.

documents for just cause, *see Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 149-50 (4th Cir. 2009).  But because of their very potency, "inherent powers must be exercised with restraint and discretion."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

The thrust of Plaintiff's argument in support of her Motion to Strike is that she did not timely receive a copy of the School Defendants' Motion to Dismiss.  She apparently believes that it was defense counsel's responsibility to ensure that she received the document, and she accuses the School Defendants of engaging in "stall tactic[s]."  (ECF No. 22 at 3.)  In response, the School Defendants correctly observe that, pursuant to Rule 5(b)(2)(C), a motion may be served by mailing it to the recipient's last known address, "in which event service is complete upon mailing."  *See United States v. Wright*, 238 F.3d 418, 2000 WL 1846340, at *2 (4th Cir. 2000) (unpublished table decision) ("Because service is complete upon mailing, non-receipt of the information does not affect the validity of service."); *see also* 4B Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1148 (4th ed. 2015) (collecting cases for the proposition that nonreceipt or nonacceptance by the person to be served generally does not impair service).  On November 24, 2015, defense counsel certified that a copy of the Motion to Dismiss was dispatched via first-class mail to Plaintiff's Baltimore address.  (ECF No. 16 at 3.)  Moreover, counsel appended to the Motion to Dismiss Plaintiff's Motion to Strike a certified mail receipt and a printout from USPS.com showing that (1) the package arrived at the postal facility on November 25 and (2) the mail carrier attempted delivery on November 30 but (3) the carrier left notice because no secure delivery location was available.  (ECF No. 28–2.) The onus was on Plaintiff to retrieve her mail; having complied with Rule 5(b)(2)(C), defense counsel had no further obligation in this respect.

Moreover, it does not appear that Plaintiff was prejudiced by the late delivery of the School Defendants' Motion to Dismiss. She admits that she received a copy of the Motion on December 18, 2015.[12] Thereafter, she filed a response in opposition on January 6, 2016. (ECF No. 39.) The Court has considered the contents of that opposition brief in its analysis of the pending Motion to Dismiss.

Because the School Defendants complied with the rules of service by mail, and because there is no indication that Plaintiff was prejudiced by her late receipt of their filing, the School Defendants' Motion to Dismiss Plaintiff's Motion to Strike (ECF No. 28) will be GRANTED, and Plaintiff's Motion to Strike (ECF No. 22) will be DENIED.

## IV. *Defendants' Motions to Dismiss*

### A. *The School Defendants (ECF No. 40)*

In Count I of her Amended Complaint, Plaintiff alleges that Principal Abiodun's e-mail to the BCPS parent group and school officials constituted unlawful retaliation in violation of Title VII and § 1981. In Counts II and III, Plaintiff avers that BCPS and BCBSC retaliated against her in violation of Title VII and § 1981 by allowing "employees, agents, [and] representatives" to harass her and by failing to properly train or monitor such employees, agents, and representatives.

Title VII makes it an unlawful employment practice for an employer to discriminate against an individual with respect to the terms or conditions of employment because of that individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). The statute's antiretaliation provision further makes it an unlawful employment practice for an employer to discriminate against an employee or applicant "because he has opposed any . . . unlawful

---

[12] Although not entirely clear, it appears that the School Defendants may have included an additional copy of the Motion along with their Motion to Dismiss Plaintiff's Motion to Strike, both of which papers Plaintiff received on December 18, 2015. (*See* ECF No. 31 at 1.)

employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." § 2000e-3(a). To establish a prima facie case of retaliation in violation of Title VII, a plaintiff must demonstrate "'(1) that she engaged in a protected activity,' as well as '(2) that her employer took an adverse employment action against her,' and '(3) that there was a causal link between the two events.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005)); *see also Cumbie v. Gen. Shale Brick, Inc.*, 302 F. App'x 192, 194 (4th Cir. 2008) (per curiam) ("We distinguish protected activity as two distinct categories:  opposition and participation.  Opposition activity includes 'utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.' . . . To proceed under the participation category, an individual must make a charge, testify, assist, or participate in any manner in an investigation, proceeding, or hearing under Title VII." (citation omitted) (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998))). Regardless whether a litigant proceeds on a theory of direct discrimination or retaliation, "[o]ne must be an 'employer' within the meaning of Title VII in order to be held liable under that statute." *Bradley v. Balt. Police Dep't*, 887 F. Supp. 2d 642, 645 (D. Md. 2012).  Moreover, "[b]efore a plaintiff may file suit under Title VII . . . he is required to file a charge of discrimination with the [Equal Employment Opportunity Commission ("EEOC")]. . . . The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

Section 1981, which dates to the Civil Rights Act of 1866, guarantees that all persons in the United States "shall have the same right . . . to make and enforce contracts, to sue, be parties,

give evidence, and to the full and equal benefit of all laws and proceedings for the security of

persons and property as is enjoyed by white citizens . . . ."  As the Supreme Court of the United

States observed in *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006), the Court has

"never retreated from what should be obvious from reading the text of the statute:  Section 1981

offers relief when racial discrimination blocks the creation of a contractual relationship, as well

as when racial discrimination impairs an existing contractual relationship."  *See also Proa v.

NRT Mid Atl., Inc.*, 618 F. Supp. 2d 447, 461 (D. Md. 2009) ("§ 1981 claims are limited to

race-based disparate treatment and/or hostile environment claims and claims for retaliatory

actions taken against a plaintiff who opposed such policies and practices."), *aff'd*, 398 F. App'x

882 (4th Cir. 2010) (per curiam).  The elements of a retaliation claim under § 1981 equal those of

a retaliation claim under Title VII.  *Boyer-Liberto*, 786 F.3d at 281; *Jenkins v. Gaylord Entm't

Co.*, 840 F. Supp. 2d 873, 880 (D. Md. 2012).

Plaintiff's Title VII and § 1981 claims are palpably defective.  As for Title VII, Plaintiff

alleges neither that she herself was employed by BCPS/BCBSC, nor that she opposed an

unlawful employment practice nor participated in the investigation thereof.  She does not claim

that she herself—or anyone else—was the victim of discrimination on the basis of race, color,

religion, sex, or national origin.[13]  Further, because Plaintiff does not allege that the School

Defendants employed her, she likewise does not allege that they took an adverse employment

action against her.  And crucially, Plaintiff does not aver that she satisfied the prerequisite of

filing a charge of discrimination with the EEOC.  As for § 1981, Plaintiff makes no suggestion

that her contract rights were impaired by race-based discrimination, nor that she participated in

the investigation of (or opposed) the impairment of her rights or anyone else's.  Indeed, given the

---

[13] For that matter, Plaintiff makes no reference to the race, color, religion, or national origin of herself or anyone else.

drastic disconnect between the elements of the statutes under which Plaintiff filed her Amended

Complaint and the facts she recounts in her pleading, the Court can only surmise that she must

have selected these causes of action without first researching their viability.

In her response in opposition, Plaintiff does not even attempt to argue that she has

pleaded a cognizable claim under Title VII or § 1981.  Instead, she rehashes the argument she

presented in her Motion to Strike—*i.e.*, that the Court should deny the School Defendants'

requested relief because Plaintiff did not promptly receive their Motion to Dismiss.  But as the

Court explained in Part III, *supra*, that argument is meritless, both because the School

Defendants had no obligation to ensure Plaintiff's *receipt* of the Motion and because Plaintiff

was not prejudiced by the delay.  In fact, nineteen days elapsed between December 18, 2015

(when Plaintiff admits she received a copy of the Motion), and January 6, 2016 (when Plaintiff

filed her response in opposition).  Had Plaintiff wished to defend her theory of the case, she had

ample opportunity to do so.  Because Plaintiff failed to respond to any of the School Defendants'

substantive arguments, and because she plainly failed to state a claim under Title VII or § 1981,[14]

---

[14] In their Motion to Dismiss, the School Defendants argue that Plaintiff's § 1981 claim should be dismissed for an additional reason:  BCBSC is an arm of the state, and so neither the Board nor its employees sued in their official capacities can be held financially liable for violations of this statute.  The School Defendants may be correct.  It is well-settled that the "right of action under § 1983 is the exclusive federal damages remedy for violation of rights guaranteed by § 1981 when the claim is pressed against a state actor."  *Bradley v. Balt. Police Dep't*, 887 F. Supp. 2d 642, 646-47 (D. Md. 2012).  Section 1983 in turn provides a civil remedy against any "person" who deprives a party of federal rights while acting under color of state law.  But neither "States [n]or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" are "persons" under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989).  And as courts in this District and in Maryland have repeatedly emphasized, "the county school boards have consistently been regarded as State, rather than county, agencies." *Chesapeake Charter, Inc. v. Anne Arundel Cty. Bd. of Educ.*, 747 A.2d 625, 629 (Md. 2000); *accord Schiffbauer v. Schmidt*, 95 F. Supp. 3d 846, 851-52 (D. Md. 2015) ("It is well established that county school boards in Maryland are considered state agencies and that, as state agencies, school boards are not considered 'persons' under § 1983.").  In fact, courts have explicitly held that BCBSC is immune from suit under § 1983.  *See Shank v. Balt. City Bd. of Sch. Comm'rs*, Civ. No. WMN-11-1067, 2014 WL 198343, at *2 (D. Md. Jan. 14, 2014); *N.T. v. Balt. City Bd. of Sch. Comm'rs*, Civ. No. JKB-11-356, 2012 WL 3028371, at *2 (D. Md. July 24, 2012); *cf. Balt. City Bd. of Sch. Comm'rs v. Koba Inst., Inc.*, 5 A.3d 60, 66 n.12 (Md. Ct. Spec. App. 2010) ("In our view, there is no doubt that [BCBSC] is properly regarded as a State agency."), *cert. denied*, 20 A.3d 116 (Md. 2011) (unpublished table decision).

The question may be more complicated, however, because the statute authorizing the formation of BCBSC specifically provides that "[t]he board may not be deemed an agency of the State."  Md. Code Ann., Educ.

the School Defendants' Motion to Dismiss (ECF No. 40) will be GRANTED, and Counts I–III will be DISMISSED WITH PREJUDICE.

### B.    The City (ECF No. 18)

In Count IV of her Amended Complaint, Plaintiff echoes her claims under Counts II and III, alleging that the City retaliated against her in violation of Title VII and § 1981 by allowing "employees, agents, [and] representatives" to harass her and by failing to properly train or monitor such employees, agents, and representatives.

Count IV fails for essentially the same reason that the earlier counts failed:  just as Plaintiff alleges no employment or contractual relationship with BCPS/BCBSC, she alleges no such relationship with the City, nor does she allege that she has aided the investigation of or opposed any practice made unlawful under these civil-rights statutes.  But as the City contends in its Motion to Dismiss, Plaintiff's claim as against it is even more attenuated than her claim as against the School Defendants.  Whereas Plaintiff has apparently had extensive dealings with the School Defendants over a lengthy period, she alleges "no facts establishing that the City employed Plaintiff, was a party to the subject mediation . . . or, more generally, that it has any connection whatsoever to Plaintiff or her dispute with the Baltimore City Public School System." (ECF No. 18 at 2.)  Under Maryland law, the City exercises no supervisory authority over BCPS or its employees; rather, these powers are vested in BCBSC.  *See* Md. Code Ann., Educ. § 4-303(d) ("The board shall have the authority and be responsible for *all functions* relating to the Baltimore City Public School System. . . . Notwithstanding any provision of local law . . . the board may adopt rules and regulations and prescribe policies and procedures for the management,

---

§ 4-303(d)(4).  The Court is aware of no published judicial opinion or guidance construing this language.  Since Plaintiff failed to state a claim under § 1981, the Court need not ultimately decide whether the School Defendants are shielded by Eleventh Amendment immunity.  However, should the issue of board immunity arise again in these proceedings or any others, the Court would welcome briefing on this discrete question.

maintenance, operation, and control of the Baltimore City Public School System." (emphasis added)); *see also* Educ. § 4-311 (empowering BCBSC to, *inter alia*, determine employee qualifications and establish terms of employment). If the City maintains no supervisory authority over Principal Abiodun or any other BCPS employees, then it certainly cannot be said to have "retaliated" against Plaintiff by failing to train or monitor such employees. *Cf. Bradley*, 887 F. Supp. 2d at 646 (finding that the City exerts insufficient control over the Baltimore Police Department to be held liable for alleged Title VII violations by that Department).

In her response in opposition to the City's Motion,[15] Plaintiff suggests that certain provisions of the Charter of Baltimore City—article II, sections 30, 64, and 68—make the City "responsible" for BCPS. But these provisions do nothing of the kind. Article II, section 30, provides that the City shall establish and maintain a system of free public schools *subject to the applicable provisions of the Code of Maryland*. As noted above, the Code shifts this responsibility to BCBSC; in fact, it explicitly transfers all powers once held by the Superintendent of Public Instruction of Baltimore City to BCBSC. *See* Md. Code Ann., Educ. § 4-303(d)(3). Article II, section 64, establishes a city authority called "Child First" for the purpose of developing enrichment programs for children; while this authority evidently partners with BCPS,[16] such partnership certainly does not make the City liable for the conduct of BCPS employees. And Article II, section 68, which simply cross-references Maryland's public-ethics law, has no apparent relevance to Plaintiff's argument.

Plaintiff insists that the Amended Complaint "clearly puts the Defendants on fair notice of the charges against them" because it "charges that Defendants retaliated against the Plaintiff

[15] The Court notes that Plaintiff appears to have copied a lengthy section of her brief, verbatim, from a brief filed in a wholly unrelated action, *FTC v. First Universal Lending, LLC*, No. 09-82322-CIV-ZLOCH (S.D. Fla. Dec. 24, 2009).
[16] *See Community Schools*, Child First Authority, Inc., http://childfirstauthority.org/community-schools/ (last visited Jan. 14, 2016).

after filing multiple complaints with the United States Department of Education."  (ECF No. 30 at 5.)  On the contrary, the Amended Complaint is rife with conclusions supported by few facts, and it asserts statutory violations that are plainly inapplicable in light of those facts.[17] Consequently, the City's Motion to Dismiss (ECF No. 18) will be GRANTED, and Count IV will be DISMISSED WITH PREJUDICE.

## V.   *Plaintiff's Motion for Leave to Amend Complaint (ECF No. 45)*

On January 12, 2016, Plaintiff filed a Motion for Leave to Amend Complaint (ECF No. 45).  Though in her Motion Plaintiff "requests leave to file a Second Amended Complaint" (*id.* at 1), it appears from the attached document that she may actually wish to supplement her existing Amended Complaint:  she adds several new factual allegations and three new causes of action, numbered Counts V–VII.[18]   In Count V, Plaintiff accuses BCPS/BCBSC of retaliation in violation of Title VI of the Civil Rights Act of 1964 ("Title VI"), as amended, 42 U.S.C. §§ 2000d *et seq.*[19]  In Count VI, Plaintiff alleges that, by filing unsealed information about M.D. and the prior OCR complaints on the Court's public docket, BCPS/BCBSC violated the Privacy Act of 1974 ("the Privacy Act"), as amended, 5 U.S.C. § 552a.  And in Count VII, Plaintiff claims that such unsealed filings likewise violated the Family Educational Rights and Privacy Act of 1974 ("FERPA"), as amended, 20 U.S.C. § 1232g.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, leave to file an amended pleading should be "freely give[n] . . . when justice so requires."  Rule 15(d) adds that a court may, on "just terms," permit a party to serve a supplemental pleading setting out events that

---

[17] Plaintiff adds to the ambiguity by citing, *for the first time*, Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000d *et seq.*, and Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. §§ 1681 *et seq.*   Rather than placing Defendants on fair notice of her claims, as Rule 8(a) of the Federal Rules of Civil Procedure requires, Plaintiff appears to be playing at legal hopscotch, skipping from theory to theory in the hope that something sticks.

[18] Plaintiff also seeks for the first time to proceed on behalf of both herself *and* her minor child, M.D.

[19] Plaintiff does not actually cite any United States Code sections; she simply references "Title VI."  The Court assumes she is referring to Title VI of the Civil Rights Act of 1964, as amended.

transpired after the date of the original pleading.  The Fourth Circuit has recognized that the "standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical.  In either situation, leave should be freely granted, and should be denied only where 'good reason exists . . . .'"  *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002) (quoting *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001)).  Despite these liberal standards, courts must deny leave where a proposed amendment would prejudice the nonmovant, where the movant has acted in bad faith, or where the amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).  An amendment is futile if it could not survive a motion to dismiss for failure to state a claim.  *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).  None of the three additional counts that Plaintiff proposes to plead could survive such a motion.

Section 601 of Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Although section 601 does not explicitly create a private right of action, it is settled that individuals may sue to enforce that provision.  *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001).  Moreover, the Fourth Circuit has recognized a cause of action for retaliation, arising from section 601's implementing regulations, for persons who participate in the investigation of or oppose practices made unlawful by that section.  *Peters v. Jenney*, 327 F.3d 307, 319 (4th Cir. 2003); *see also Langadinos v. Appalachian Sch. of Law*, No. 1:05CV00039, 2005 WL 2333460, at *5 (W.D. Va. Sept. 25, 2005) ("To support [a Title VI] retaliation claim, the plaintiff . . . will be required to show that: (1) he engaged in a protected

activity; (2) the defendants took an adverse action against him; and (3) there was a causal connection between the protected activity and the adverse action.").

Although the relief available under Title VI is not restricted to employees—and in this respect Plaintiff's proposed Count V is closer to a cognizable claim than were her earlier counts—Count V is still fatally defective because Plaintiff has made no allegation that she or anyone else has suffered discrimination on the basis of race, color, or national origin.   In the absence of a nexus to race, Title VI cannot deliver the relief that Plaintiff seeks.

Nor can Plaintiff recover under the Privacy Act or FERPA.  The Privacy Act creates a civil action for individuals who are harmed by certain unlawful agency actions, including improper disclosure of records—but by its terms, the Privacy Act applies exclusively to federal agencies. *Brown v. Prince George's Hosp.*, No. RWT 09cv295, 2011 WL 3240461, at *1 n.1 (D. Md. July 27, 2011); *Faxon v. Maryland*, Civ. No. JFM-10-28, 2010 WL 148707, at *1 (D. Md. 2010). Neither BCPS nor BCBSC is a federal agency, and so the Privacy Act does not reach these entities. As for FERPA, that statute creates no private action whatsoever.  *See Hodge v. Coll. of S. Md.*, Civ. No. DKC 14-2829, 2015 WL 4639653, at *6 (D. Md. Aug. 3, 2015) ("FERPA . . . does not provide a private right of action; rather, it 'provides for an aggregate action only:  the withdrawal of public institution funding for the impermissible release of student records.'" (quoting *Henry's Wrecker Serv. Co. of Fairfax Cty., Inc. v. Prince George's Cty.*, 214 F. Supp. 2d 541, 545 (D. Md. 2002))); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002) ("[T]here is no question that FERPA's nondisclosure provisions fail to confer enforceable rights.").[20]

---

[20] Even if FERPA created a private cause of action (it does not), Plaintiff's claim would still fail; the statute's implementing regulations provide that an educational institution may disclose personally identifiable student information without consent (and without a prior order or subpoena) if a parent or student sues the institution and the information is relevant to the institution's defense.  *See* 34 C.F.R. § 99.31(a)(9)(iii)(B).

Because proposed Counts V–VII fail to state a claim for relief, the Court will DENY Plaintiff's Motion for Leave to Amend Complaint (ECF No. 45).

## VI.  *Miscellaneous Motions*

In addition to the primary motions discussed above, the parties have filed numerous supplemental motions that are amenable to resolution at this time.

On December 11, 2015, Plaintiff filed a Motion to Supplement [Her] Motion to Strike (ECF No. 27).  The Court has reviewed Plaintiff's submission and determined that it does not inform or enhance the Court's analysis concerning the Motion to Strike; in fact, Plaintiff bases her proposed Supplement in large part on Rule 60(b) of the Federal Rules of Civil Procedure, which has no application as the Court has not entered a final judgment in this matter.  The Court will thus DENY Plaintiff's Motion to Supplement.

On January 4, 2016, Plaintiff filed an Emergency Motion for Protective Order (ECF No. 35), alleging that the School Defendants violated certain confidentiality agreements through their submissions to the Court.  Plaintiff attached as an exhibit a proposed protective order, which she appears to have drawn from a template available via the Internet.  Plaintiff did not attach copies of the purported confidentiality agreements; she did supply several such documents in a separate submission (ECF Nos. 37–1, 37–2 & 37–3), but these documents are signed by Plaintiff alone. Assuming *arguendo* that the School Defendants are bound by these confidentiality agreements and that the unsealed submissions to the Court violated the agreements, the Court's decision to strike Exhibit 2 to the School Defendants' Motion to Dismiss (discussed below) should alleviate Plaintiff's concerns.   In any event, because the Court is dismissing all of Plaintiff's pending counts, a protective order is inappropriate at this stage.  Accordingly, the Court will DENY AS MOOT Plaintiff's Emergency Motion.

Also on January 4, 2016, Plaintiff filed a Motion to File Sealed Declaration and Exhibits (ECF No. 36) in relation to her prior Emergency Motion for Sanctions (ECF No. 34).  The Court will GRANT this Motion.

Finally, on January 8, 2016, Plaintiff filed a Second Emergency Motion for Sanctions (ECF No. 42), contending that the School Defendants failed to thoroughly redact Exhibit 2 to their Motion to Dismiss even after the Court warned them about noncompliance with the redaction requirements of Rule 5.2(a) of the Federal Rules of Civil Procedure (ECF No. 38). Plaintiff's contention is correct:  M.D.'s full name appears unredacted on page four of the exhibit.  Although the Court does not share Plaintiff's suspicion that this error was "retaliatory" and "deliberate in nature," the Court considers the error inexcusable.  Accordingly, the Court will GRANT IN PART Plaintiff's Motion to the extent that she requests redaction, and it will further ORDER the offending exhibit (ECF No. 40–2) STRICKEN from the record.  As the School Defendants previously had an opportunity to redact and refile their exhibit but failed to do so properly, the Court will now DENY their Motion to Supplement (ECF No. 46).  Should the School Defendants file additional papers in this (or any other) matter, they shall closely adhere to the Federal Rules of Civil Procedure, the Court's Local Rules, and the Court's *Electronic Filing Requirements and Procedures for Civil Cases (CM/ECF Version 6.1)* (2013).[21]

## VII. Conclusion

To date, Plaintiff has filed three variations of her complaint against Defendants, yet she has failed to state a single cognizable claim for relief.  Although the Court is sympathetic to the plight of *pro se* litigants who may not understand or appreciate the complexities of federal civil-rights litigation, the Court is also loath to inflict upon defendants the burden of responding to a continual stream of meritless pleadings and motions.  Plaintiff has enjoyed a fair opportunity

---

[21] http://www.mdd.uscourts.gov/publications/forms/Civil%20Manual%20-%206.1%20-%20FINAL.pdf.

to present her case; because she has not pleaded a plausible claim, the Court will now order her case closed.

In light of the foregoing, an Order shall enter DENYING Plaintiff's Motion to Strike (ECF No. 22); GRANTING Defendants' Motions to Dismiss (ECF Nos. 18 & 40); disposing of the remaining open motions in a manner consistent with this Memorandum; and closing this case.

DATED this 15th day of January, 2016.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge